UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RECEIVED
APR -4 2024
AT 8:30 _____ M
CLERK, U.S. DISTRICT COURT - DNJ

| | |
|---|---|
| UNITED STATES OF AMERICA | Hon. Robert Kirsch |
| v. | Crim. No. 24-235 |
| MATTHEW C. TUCCI | 26 U.S.C. § 7201<br>26 U.S.C. § 7212(a) |

# INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Trenton, charges as follows:

## BACKGROUND AND RELEVANT INDIVIDUALS AND ENTITIES

At all times relevant to this Indictment:

1. Defendant MATTHEW C. TUCCI ("TUCCI") resided in West Long Branch, New Jersey; Palm Beach Gardens, Florida; and Miami, Florida. In 2015 and 2016, TUCCI obtained approximately $11.4 million in income from refunds paid by the Customs and Tax Administration of the Kingdom of Denmark for taxes purportedly paid on shares purportedly held by pension plans TUCCI had set up for friends, acquaintances, and relatives. Rather than depositing the refunds in the respective bank accounts TUCCI had established for the pension plans, TUCCI deposited the funds in five accounts held by five nominee companies he created and controlled: Lava Beach, Inc.; Icon Beach, Inc.; Sand Dollar Beach, Inc.; Starfish Dunes, Inc.; and White Sands Advisors, Inc. TUCCI then filed returns on which he reported he owed taxes, but he failed

to pay those taxes. Instead, he took steps to evade the payment of his taxes and conceal his assets from the Internal Revenue Service.

2. "Company-1" was created by TUCCI and "Individual-1" in or around July 2018 as a real estate holding company through which TUCCI could conceal real estate he owned from the IRS.

3. "Individual-2" was a financial services consultant who, among other things, connected borrowers with lenders. Individual-2 helped TUCCI find lenders to refinance his properties.

4. "Individual-3" was a real estate investor. TUCCI asked Individual-3 to purchase certain properties from him so that TUCCI and Individual-3 could improve the properties as necessary, sell the properties, and then split any profits between them. Individual-3 purchased 14 properties from TUCCI using Individual-3's company, "Company-2."

5. "Individual-4" was engaged in flipping real estate, an investment strategy in which Individual-4 purchased run-down properties, repaired them, and then sold them for a profit. Individual-4 purchased the run-down properties through Individual-4's company, "Company-3." Individual-4 partnered with TUCCI to flip certain properties.

6. The Internal Revenue Service ("IRS") was an agency within the United States Department of the Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States.

## TAX FILING AND PAYMENT OBLIGATIONS

7. A U.S. Individual Income Tax Return, Form 1040, was used by U.S. taxpayers to file an annual income tax return.

8. Individuals were required to make estimated tax payments if they expected to owe $1,000 or more in tax when their return was filed. Estimated tax payments were generally required to be paid quarterly. For example, for 2015, estimated tax payments were due on the following dates: April 15, 2015; June 15, 2015; September 15, 2015; and January 15, 2016.

9. Individuals were required to pay their income tax for calendar years 2015 and 2016 by April 18, 2016, and April 18, 2017, respectively. On or about the dates set forth below, for calendar years 2015 and 2016, TUCCI filed joint Forms 1040 on behalf of himself and his spouse, declaring under penalty of perjury that he and his spouse received adjusted gross income in the amounts reported and owed taxes in the amounts set forth below:

| Calendar Year | Approximate Date of Filing | Adjusted Gross Income Reported | Total Tax Reported | Amount Due and Owing as of the Statutory Due Date |
|---|---|---|---|---|
| 2015 | November 29, 2016 | $5,327,103 | $2,111,747 | $1,752,220 |
| 2016 | January 30, 2018 | $1,759,213 | $643,618 | $659,003 |
| | **TOTAL:** | **$7,086,316** | **$2,755,365** | **$2,411,223** |

10. TUCCI failed to pay any of the federal individual income taxes that he owed. He also made no estimated tax payments towards his 2015 and 2016 tax liabilities, as required.

3

## TUCCI'S REAL ESTATE TRANSACTIONS AND INVESTMENTS

11. From 2015 through 2018, instead of making estimated tax payments or paying his outstanding tax liabilities, TUCCI purchased more than $5.5 million in real estate, which was either titled in his own name or in the name of entities he controlled, as shown below:

| Approximate Purchase Date | Property | Approximate Purchase Price |
|---|---|---|
| July 10, 2015 | Property-1 in Ocean, New Jersey | $200,000 |
| August 14, 2015 | Property-2 in West Long Branch, New Jersey | $552,000 |
| August 24, 2015 | Property-3 in West Long Branch, New Jersey | $215,000 |
| August 24, 2015 | Property-4 in West Long Branch, New Jersey | $205,000 |
| September 3, 2015 | Property-5 in Miami, Florida (partial interest) | $742,180 |
| September 15, 2015 | Property-6 in Palm Beach Gardens, Florida | $657,000 |
| September 21, 2015 | Property-7 in West Long Branch, New Jersey | $379,000 |
| October 9, 2015 | Property-8 in Allenhurst, New Jersey | $615,000 |
| December 14, 2015 | Property-9 in Oceanport, New Jersey | $605,000 |
| September 19, 2016 | Property-10 in Asbury Park, New Jersey | $127,000 |
| October 28, 2016 | Property-11 in West Long Branch, New Jersey | $487,500 |
| December 9, 2016 | Property-12 in Asbury Park, New Jersey | $16,500 |
| January 6, 2017 | Property-13 in Asbury Park, New Jersey | $212,200 |
| March 3, 2017 | Property-14 in Asbury Park, New Jersey | $375,000 |
| April 11, 2017 | Property-15 in Oakhurst, New Jersey | $255,000 |

4

12. On or about September 14, 2015, TUCCI, through Sand Dollar, Beach, Inc., paid approximately $275,000 to satisfy in full the mortgage of a relative ("Relative-1") on Property-16. Relative-1 planned to sub-divide Property-16 and rent out the subdivided units. In exchange for the mortgage payoff, Relative-1 planned to share one-third of the rental profits with TUCCI. Ultimately, Property-16 was never sub-divided and rented out.

13. On or about October 20, 2015, TUCCI, through Lava Beach, Inc., sent approximately $570,000 in wire transfers to Company-3's bank account. Between June and November 2016, TUCCI subsequently sent four additional wire transfers from White Sands Advisors, Inc. and Icon Beach, Inc. to Company-3 totaling approximately $375,000. The transferred funds were used to purchase at least two properties, Property-17 located in North Caldwell, New Jersey, and Property-18 located in Port Murray, New Jersey.

14. In addition, on or about October 21, 2015, TUCCI, through Lava Beach, Inc., purchased Property-19 located in West Long Branch, New Jersey, for approximately $564,000 for a relative ("Relative-2"). TUCCI also paid for more than $100,000 in improvements to Property-19, on behalf of Relative-2 and their family.

15. In or around June 2016, TUCCI, through White Sands Advisors, Inc., invested approximately $750,000 in a green energy company.

16. In or around December 2016, TUCCI bought Property-20 from Relative-2. Through Icon Beach, Inc., TUCCI paid approximately $363,625 to satisfy in full Relative-2's mortgage on Property-20. In exchange for the

mortgage payoff, Property-20 was titled in the name of 12 Chestnut Place LLC, an entity that TUCCI controlled.

## TUCCI'S FRAUDULENT TRANSACTIONS INVOLVING PERSONAL ASSETS

17. TUCCI conducted a series of fraudulent transactions to conceal his assets and income from the IRS. Specifically, in a series of transactions designed to make it appear as though he had little to no personal assets, TUCCI transferred real estate to nominee entities that he controlled, as follows:

   a. In or around May 2017, on account of TUCCI's outstanding taxes due and owing, as set forth in Paragraph 9, the IRS filed a Notice of Federal Tax Lien against TUCCI, which encumbered Property-6. This, among other things, alerted creditors that the federal government had a legal right to that property. Shortly thereafter, TUCCI deeded Property-6 to a limited liability company ("LLC") not in his name, but of which TUCCI was the sole member, for only $10, in an attempt to shield the property from the federal tax lien.

   b. In or around November 2018, TUCCI attempted to conceal from the IRS his ownership of 12 properties that had not yet been encumbered by federal tax liens. TUCCI transferred the following 12 properties to Company-1, in an attempt to place the assets out of the reach of the IRS:

- Property-1
- Property-2
- Property-7
- Property-9
- Property-21
- Property-22
- Property-23
- Property-24

6

- Property-14
- Property-20
- Property-25
- Property-26

In these real estate transfers, Company-1 paid only $1 for each of the 12 properties. Once the properties were transferred to Company-1, TUCCI with Individual-2's assistance planned to obtain hard money loans on the properties – which he would not have been able to do had the properties been encumbered by federal tax liens – in an attempt to extract additional funds from them, which he planned to use to purchase other properties that he could sell. TUCCI planned to split any profits earned from flipping these properties with Individual-1 and Individual-2 (who was prepared to assist with selling the properties). From in or around November 2018 through in or around May 2019, TUCCI successfully received hard money loans against all 12 properties in the total amount of approximately $2,830,880, of which he used approximately $1,567,764 to pay off his mortgages. In addition, TUCCI re-financed at least one of the 12 properties, Property-20, as explained in paragraph 18(c), below.

    c.    Although the properties were titled in the name of Company-1, TUCCI continued to exercise control over those properties. For example, after transferring the properties to Company-1, TUCCI continued to collect rent from the tenants of some of those properties. TUCCI also filed eviction proceedings in New Jersey state courts seeking to evict tenants of those properties, even though on paper TUCCI had no formal ownership interest in the properties.

d.  In or around August 2020, TUCCI was in the midst of divorce proceedings. As a part of those divorce proceedings, a receiver was appointed by the court to handle the financial aspects of the divorce, including managing TUCCI's properties. The receiver wanted to sell the properties to settle TUCCI's outstanding tax liabilities. TUCCI wanted to keep the properties to allow them to appreciate. Ultimately, the receiver caused TUCCI to transfer title of 11 of the 12 properties listed in paragraph 17(b), above from Company-1 to the LLCs that TUCCI controlled.

e.  Beginning in or around July 2021 through at least in or around July 2022, Individual-3, through Company-2, purchased the following 14 properties from TUCCI:

- Property-1
- Property-3
- Property-7
- Property-9
- Property-10
- Property-12
- Property-14
- Property-15
- Property-20
- Property-21
- Property-22
- Property-25
- Property-27
- Property-28

Individual-3 paid TUCCI between approximately $8,000 to $10,000 for each property, with a goal of improving the properties as necessary, reselling them, and splitting the profits with TUCCI. TUCCI did not pay over any of those funds to the IRS in partial satisfaction of his tax liabilities.

      f.     Following the sale of these 14 properties to Individual-3, TUCCI collected rents from some of the properties, and even resided at one of them, even though he claimed he was no longer the owner.

      18.    TUCCI received hundreds of thousands of dollars from the sale of properties, including, but not limited to the following:

      a.    On or about March 29, 2019, TUCCI received approximately $214,000 from the sale of Property-29, real estate located in Oakhurst, New Jersey. Property-29 was titled in the name of 58 Monmouth Road, LLC, which was intended to prevent the federal tax liens against TUCCI from attaching to that property. TUCCI was therefore able to sell the property free and clear of any federal tax liens. TUCCI did not disclose the sale of this property to the IRS and did not pay over any of the proceeds of the sale to the IRS.

      b.    On or about May 20, 2019, TUCCI sold Property-24 (which he had earlier transferred to Company-1 for $1) for approximately $428,000. Instead of using the proceeds to pay his tax debts, TUCCI directed Company-1 to use approximately $100,000 from the sale proceeds to cover TUCCI's personal expenses.

      c.    In or around May 2019, TUCCI facilitated a cash-out refinancing of Property-20, in which Company-1 borrowed against the equity in the property, resulting in Company-1's receipt of more than $60,000. After receiving those funds, Company-1 wrote a check for $60,000 to 12 Chestnut Place LLC, an entity that TUCCI wholly owned and controlled. TUCCI did not use any of that money to pay his outstanding tax liabilities.

        d.    On or about October 11, 2019, TUCCI received $290,000 from the sale of his ownership interest in Property-5. TUCCI did not notify the IRS that he received this money, and he did not use any of those funds to pay his outstanding tax liabilities.

    19.    Despite receiving more than $500,000 from the transactions in Paragraph 18 (a)-(d), above, TUCCI did not pay any of his outstanding tax liabilities for 2015 and 2016.

### TUCCI'S MISREPRESENTATIONS TO THE IRS

    20.    From in or around January 2017 through in or around November 2020, TUCCI received notices from the IRS for tax years 2015 and 2016, informing him of the amounts he owed, including interest and penalties, and providing him with payment options. Despite receiving these notices, TUCCI failed to fully pay the tax, penalties, and interest he owed to the IRS for 2015 and 2016.

    21.    From in or around May 2017 through in or around October 2021, TUCCI corresponded and communicated with several IRS Revenue Officers ("Revenue Officer") regarding his outstanding tax liabilities ("collection proceedings"). On numerous occasions during the collection proceedings, TUCCI acknowledged he owed taxes and claimed he would pay those taxes. Despite those assertions, TUCCI failed to fully pay the taxes he owed.

    22.    From in or around April 2017 through in or around October 2021, having been notified that the IRS could file tax liens against him and levy upon those liens on account of his outstanding tax liabilities, TUCCI made false

statements and failed to disclose material facts to several Revenue Officers concerning his financial resources, including, but not limited to, the following:

    a.    In or around April 2017, TUCCI submitted a request for an Installment Agreement with the IRS in which he requested to pay $1,000 per month to satisfy his outstanding tax liabilities. TUCCI failed to provide Revenue Officer-1 with information about his assets so that the IRS could determine his ability to pay under the proposed Installment Agreement. Because TUCCI failed to provide this necessary information, the IRS was unable to determine whether the proposed Installment Agreement was feasible, and it was therefore denied.

    b.    In or around July 2017, TUCCI submitted a request to the IRS to subordinate the federal tax lien on Property-6 so that he could obtain a loan against that property. Property-6 was the same property that TUCCI transferred to an LLC after finding out the IRS had filed a Notice of Federal Tax Lien, as described in paragraph 17(a), above. TUCCI requested to keep approximately $381,932 of the loan proceeds and pay the IRS $25,000. TUCCI failed to provide all the information necessary for the IRS to consider the request and the request was denied.

    c.    In the subsequent months, Revenue Officer-1 repeatedly explained to TUCCI and his legal counsel that for a lien subordination request to be approved by the IRS, TUCCI would have to agree to surrender all net proceeds to the government. Despite this, in or around November 2017, TUCCI submitted another request to subordinate the federal tax lien on Property-6 so

that he could obtain a loan against the property of which he proposed keeping over $189,000 and only paying the IRS approximately $100,000. This request, like the previous one, was incomplete. The request was denied. More than one year later, TUCCI finally decided to sell Property-6. In or around December 2018, the IRS received approximately $643,262 from the sale of Property-6.

        d.     In or around September 2017, TUCCI, through legal counsel, informed Revenue Officer-1 that he was "broke." TUCCI's bank accounts, meanwhile, reflected deposits totaling over $332,445 for that year. Further, as set forth above, on or about January 6, 2017; March 3, 2017; and April 11, 2017, TUCCI purchased Properties-13, 14, and 15 for approximately $212,200; $375,000; and $255,000, respectively. Only one of these properties was titled in TUCCI's name. The other two were titled in the name of LLCs that TUCCI controlled.

        e.     In or around September 2017, February 2019, and October 2019, TUCCI provided Revenue Officers-1, 2, and 3, respectively, with a list of assets so that the IRS could fully consider his ability to pay his outstanding tax liabilities. Each time, TUCCI provided the Revenue Officers with incomplete lists that falsely omitted properties he owned.

        f.     In or around March 2019, TUCCI submitted four applications to the IRS requesting that the IRS remove the federal tax liens on four properties (Properties-11, 13, 27, and 30) purportedly so that TUCCI could sell the properties and provide the proceeds of the sales to the IRS. Each of the four applications listed Company-1 as the buyer of the properties. TUCCI

asserted in each application that he had no connection to Company-1. In reality, and as described above in paragraph 17(b), above, TUCCI had previously transferred 12 other properties to Company-1 for $1 each to conceal his ownership of those properties. Based on TUCCI's misrepresentations about his connection to Company-1, the IRS granted conditional discharges of the federal tax liens on the four properties. For the federal tax liens to be fully discharged, the IRS informed TUCCI that he had to provide the following:

- Payment in the amount of the United States' interest in the federal tax liens;
- Copies of the deeds or other documents showing TUCCI was divested of rights, title or interest in the four properties;
- Copies of the final settlement statements; and
- Proof that no funds were to be issued to TUCCI at closing.

TUCCI failed to comply and as a result, the federal tax liens were not ultimately discharged. The IRS did not receive any funds in connection with the conditional discharges. However, nearly a year later, in or around 2020, TUCCI sold Properties-11 and 13 to a different third party. The IRS received approximately $700,796 in total from the sale of Properties-11 and 13. TUCCI transferred Property-27 to Company-2, as set forth in paragraph 17(e), above. Notwithstanding funds the IRS obtained through the sale of properties, TUCCI never fully paid his tax liabilities, including penalties and interest, for 2015 and 2016.

## COUNT ONE
## (Evasion of the Payment of Taxes Due and Owing)

23. Paragraphs 1 through 22 are incorporated as though fully set out herein.

24. From in or about April 2016 through in or about July 2022, in the District of New Jersey and elsewhere, defendant

## MATTHEW C. TUCCI,

willfully attempted to evade and defeat the payment of income tax due and owing jointly by him and his spouse to the United States of America for the calendar years 2015 and 2016, by committing the following affirmative acts, among others:

    a. Purchasing real estate properties and placing and holding them in the names of LLCs;

    b. Purchasing real property for a relative and paying off the relative's existing mortgage;

    c. Transferring properties to Company-1 as his nominee;

    d. Using nominee accounts to purchase real estate and pay personal expenses; and

    e. Making misrepresentations to the IRS, including false, incomplete, and misleading statements concerning his ability and intent to pay.

In violation of Title 26, United States Code, Section 7201.

## COUNT TWO
## (Corruptly Endeavoring to Obstruct the Due Administration of the Internal Revenue Laws)

25. Paragraphs 1 through 22 are incorporated as though fully set out herein.

26. From in or about January 2017 through in or about November 2020, in the District of New Jersey, and elsewhere, defendant

## MATTHEW C. TUCCI,

knowing of and reasonably foreseeing the collection proceedings described in Paragraphs 20 through 22, did corruptly obstruct and impede, and corruptly endeavor to obstruct and impede, the due administration of the internal revenue laws, that is, the collection proceedings, by committing and causing to be committed various acts, each such act having a nexus to the collection proceedings, including but not limited to the following:

    a. Purchasing real estate properties and placing and holding them in the names of LLCs;

    b. Requesting Installment Agreements and federal tax lien subordinations in bad faith;

    c. Transferring properties to Company-1 as his nominee; and

    d. Making misrepresentations to the IRS, including false,

15

incomplete, and misleading statements concerning his ability and intent to pay.

In violation of Title 26, United States Code, Section 7212(a).

A TRUE BILL

*Philip R. Sellinger by Ar*

---
PHILIP R. SELLINGER
United States Attorney

CASE NUMBER: 24-CR-235 (RK)

# United States District Court
# District of New Jersey

UNITED STATES OF AMERICA

v.

MATTEW TUCCI

## INDICTMENT FOR

26 U.S.C. § 7201
26 U.S.C. § 7212(a)

A True Bill



PHILIP R. SELLINGER
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

ERIC A. BODEN
ASSISTANT U.S. ATTORNEY
NANETTE DAVIS
SR. LITIGATION COUNSEL, TAX DIVISION
CATRIONA M. COPPLER
TRIAL ATTORNEY, TAX DIVISION
TRENTON, NEW JERSEY
609-989-2190